UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CYNTHIA LEE BIGGS,

     Petitioner,

v.                                                                    Case No. 3:17cv681-LC-HTC

MARK S. INCH,

     Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Cynthia Lee Biggs's habeas corpus petition under 28 U.S.C. § 2254, challenging her judgment and conviction imposed by the Santa Rosa County Circuit Court (Case No.: 2006-CF-1726).  After considering the petition, the State's response (ECF Doc. 22), and Biggs's reply (ECF Doc. 28), the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    The Offense And Conviction

Biggs was a receptionist and office clerk at Dr. Angeli Saith's office in Pace, Florida.  Biggs, her husband, and her daughter were also patients of Dr. Saith.  On September 8, 2006, Adams Pharmacy reported to law enforcement that another

employee of Dr. Saith, Teresa Felts, attempted to fill a suspicious prescription. Law enforcement went to the pharmacy, reviewed various prescription records, and obtained information leading them to investigate Biggs and her family. As part of their investigation, law enforcement met with Dr. Saith at her home to ask her about Felts and the Biggs family. Dr. Saith had the Biggs family's medical records with her during the interview and used them to answer questions.

Based on the pharmacy records and statements from Dr. Saith, law enforcement determined that from October 2005 to July 2006 at least two (2) prescriptions for Clonazepam and eight (8) prescriptions for Hydrocodone were sent to Adams Pharmacy from Dr. Saith's office for Cynthia Lee Biggs and picked up by Cynthia Biggs or a family member. Dr. Saith also signed an affidavit averring that none of those prescriptions were authorized by her. Cynthia Biggs was listed by Adams Pharmacy as the person calling in her own prescriptions on several occasions.

Biggs filed a motion to suppress "any testimony, medical or prescription records of the Defendant, any statements of the Defendant together with any evidence which may be deemed 'fruit of the poisonous tree,'" arguing that the use of the pharmacy records and the statements by the doctor violated Biggs's privacy rights. ECF Doc. 23-1 at 40. After a hearing, *id.* at 151 (beginning of transcript), the trial court denied the motion, and admitted both the information received from

the pharmacy and that received from Dr. Saith.  *Id.* at 43 (written order memorializing in-court denial of motion, *see id.* at 218-20).  As will be discussed below, the use and admission of these records and information from Dr. Saith is at the core of several of Petitioner's claims for relief.

Biggs's trial began on November 2, 2009, and, on November 4, 2009, a jury found her guilty on three counts of obtaining drugs by fraud, misrepresentation or forgery (clonazepam in two counts, hydrocodone in the third) and seven counts of drug trafficking, with each trafficking count involving more than 28 grams but less than 30 kilograms of hydrocodone.  ECF Doc. 23-1 at 69.  Biggs faced a mandatory minimum 25 years on the trafficking counts[1] and, on December 17, 2009, was sentenced to 21 years, 10 months and 6 days on Counts 1 through 3 and 30 years (with a 25-year mandatory minimum) on Counts 4 through 10, to run concurrently. ECF Doc. 23-1 at 103-04.

### B.    Postconviction Proceedings

#### 1.  Direct appeal

Biggs, through counsel, timely filed a direct appeal of her judgment and conviction, raising only one issue -- relating to the warrantless seizure of the pharmacy records.  ECF Doc. 23-3 at 309.  On August 24, 2011, the First DCA

---

[1] Fla. Stat. § 893.135(7)(c)1.c. provides that when the amount of hydrocodone "[i]s 28 grams or more, but less than 30 kilograms, such person shall be sentenced to a mandatory minimum term of imprisonment of 25 calendar years and pay a fine of $500,000."

affirmed without written opinion except for a citation to *State v. Carter*, 23 So. 3d 798 (Fla. 1st DCA 2009). ECF Doc. 23-4 at 126. Biggs filed a motion for rehearing on September 8, 2011, which was denied October 26, 2011. ECF Doc. 23-5 at 2.

On the same day she filed her motion for rehearing, and before the issuance of the court's mandate, Biggs filed a supplemental initial brief. ECF Doc. 23-5 at 4. In the supplemental initial brief, Biggs attempted to raise three (3) additional claims, relating to (1) the admission of Biggs's medical records as obtained from Dr. Saith; (2) the lack of jury instructions for the affirmative defense of a valid prescription and for the knowledge element; and (3) the constitutionality of the offenses of obtaining prescriptions by fraud and trafficking in hydrocodone. ECF Doc. 23-5 at 5.

The State moved to strike the supplemental initial brief on October 28, 2011. ECF Doc. 23-5 at 58. The online docket shows the entry "Noted" next to the motion to strike. Otherwise, the First DCA did not rule on the motion. Instead, the court issued its mandate on November 14, 2011. ECF Doc. 23-5 at 67.

On November 18, 2011, Biggs filed a motion to recall mandate, ECF Doc. 23-5 at 69, which the First DCA denied on December 8, 2011, ECF Doc. 23-6 at 2. Biggs did not seek further review from the Florida Supreme Court or the United States Supreme Court. Thus, the judgment, for purposes of 28 U.S.C. § 2244(d)(1), became final upon expiration of the 90-day period in which Biggs could have sought

direct review of her conviction in the United States Supreme Court, or on March 7, 2012. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A)").

### 2.  Post-conviction motions

On January 11, 2012, Biggs filed a 3.800 motion to reduce sentence with the trial court, which the court denied on February 6, 2012, ECF Doc. 23-6 at 19.  On June 29, 2012, Biggs filed a motion to correct illegal sentence, ECF Doc. 23-6 at 33, which the state court dismissed on July 16, 2012, as improper because it attacked the conviction itself and not the sentence.  ECF Doc. 23-6 at 37.  The state court did so without prejudice to Biggs's filing a timely 3.850 motion.

Biggs timely appealed the state court's denial of her 3.800 post-conviction motion, and the First DCA affirmed *per curiam* and without written opinion on October 11, 2012.  ECF Doc. 23-6 at 44.  On November 6, 2012, the court issued the mandate.  ECF Doc.  23-7 at 2.

On December 27, 2012, Biggs filed a petition for writ of habeas corpus in the First DCA, alleging four (4) grounds of ineffective assistance of appellate counsel. ECF Doc. 23-7 at 4.  On September 24, 2013, the First DCA denied the petition "on the merits."  ECF Doc. 23-8 at 18.  Biggs filed a motion for rehearing and/or

certification on October 10, 2013 (ECF Doc. 23-8 at 20), which the First DCA denied on November 5, 2013.  ECF Doc. 23-8 at 25.

On November 14, 2013, Biggs filed a 3.850 motion for postconviction relief. ECF Doc. 23-8 at 50.  The state court allowed Biggs to amend her motion twice, resulting in the filing of a second amended motion on June 25, 2015, raising six (6) grounds of ineffective assistance of trial counsel and one ground of cumulative error. ECF Doc. 23-9 at 60.

The state court granted a limited evidentiary hearing on November 17, 2015, including, as pertinent to this petition, the issue of whether counsel was ineffective for failing to convey a favorable plea.  ECF Doc. 23-9 at 218.  The hearing was held on February 16, 2016.  (The transcript begins at ECF Doc. 23-10 at 232.)  On April 11, 2016, the state court issued a written order denying all grounds for relief.  ECF Doc. 23-10 at 19.  Biggs filed a motion for rehearing, which was denied on May 3, 2016, 23-10 at 220.  She timely filed a notice of appeal on May 9, 2016.  ECF Doc. 23-10 at 222.

In her initial brief on appeal of the denial of the second amended 3.850 motion, she argued only four of the seven grounds initially raised (i.e., grounds one, two, four and six) in her second amended 3.850 motion.  ECF Doc. 23-11 at 86.  The First DCA affirmed *per curiam* and without written opinion on July 12, 2017.  ECF Doc. 23-12 at 11.  Biggs filed a motion for rehearing with written opinion, ECF Doc. 23-

12 at 13, which was denied on August 29, 2017, ECF Doc. 23-12 at 18.  The mandate was issued September 19, 2017.  ECF Doc. 23-11 at 20.

The instant federal petition was filed on September 6, 2017.  Because the federal petition was filed before the mandate was issued on September 19, 2017, and only 171 untolled days had elapsed from the date of final judgment, the instant petition is timely filed.[2]

## II.    STANDARDS OF REVIEW

### A.    Federal Review Of State Court Decision

Under the standard of review for a § 2254 motion, this Court should not  grant habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[2]  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year limitations period for filing a § 2254 petition.  28 U.S.C. § 2244(d)(1).  The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (unless one of the later dates enumerated in the statute applies – which they do not here).  *Id.* § 2244(d)(1)(A).  The limitations period is tolled for the time during which a "properly filed" postconviction motion is pending in state court.  *Id.* § 2244(d)(2).

In this case, the limitations period began to run on March 7, 2012, but was tolled on June 29, 2012, after 113 days passed, when Biggs filed her motion to correct illegal sentence.  The limitations period remained tolled until November 6, 2012, when the First DCA issued its mandate affirming the state court's denial of the 3.800 motions.  After another 50 days passed, the limitations period was tolled again on December 27, 2012, when Biggs filed her state court habeas petition, and remained tolled until November 5, 2013, when the First DCA denied Petitioner's motion for rehearing on the denial of her habeas petition.  After another 8 days passed, the limitations period was tolled again when Biggs filed her 3.850 motion.  Because Biggs filed the instant federal petition before the First DCA issued its mandate affirming the state court's denial of relief on the 3.850 motion, and thus no additional time had expired, only 171 days of untolled time had expired when this petition was filed, making it timely.

Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).

Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the . . . case."  *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).  Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Additionally, when an issue is raised to the state appellate court, but no written decision is issued, this Court should look through that unwritten decision to the last

related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). For purposes of Biggs's petition, the undersigned looked at the state court's decision denying Biggs relief on her second amended 3.850 motion as to all grounds except for Ground Eleven.

As to Ground Eleven, which was included in Biggs's state habeas petition to the First DCA, the First DCA denied the petition without written opinion, ECF Doc. 23-8 at 18, and denied a motion for rehearing without written opinion. *Id.* at 25. Because there is no written opinion setting out the state court's reason for denying this ground of relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Additionally, the Supreme Court stated in *Richter* that "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

**B**.   **Legal Standard For Ineffective Assistance Of Trial Counsel**

Biggs's petition includes five (5) claims of ineffective assistance of trial counsel ("IATC") and two (2) claims of ineffective assistance of appellate counsel. ECF Doc. 1. To prevail on these claims, Biggs must satisfy the two-pronged test set

forth in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), requiring that she show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The deficient performance prejudiced the defendant only if the reasonable probability of a different result rises to a level that is "sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on a claim of ineffective assistance of counsel, both parts of the *Strickland* test must be satisfied. *Bester v. Warden, Att'y Gen. of the State of Ala.*, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)), *cert. denied*, ––– U.S. ––––, 137 S.Ct. 819 (2017). However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other prong. *Id.*

## III.  GROUNDS ONE, THREE AND FOUR ARE PROCEDURALLY DEFAULTED

The State argues Biggs failed to exhaust Grounds One, Three and Four of the petition and, thus, these claims are procedurally defaulted.[3]  ECF Doc. 22 at 28. Biggs does not dispute that these grounds for relief were not raised in her initial appellate brief.  However, she argues she nonetheless exhausted these claims by raising them in her supplemental initial brief on direct appeal.  According to Biggs, by including them in her supplemental initial brief, the First DCA had an "opportunity" to review these issues regardless of whether the court "passed" on that opportunity.  ECF Doc. 28 at 5.

The problem with Biggs's argument, however, is that the supplemental brief was not properly before the court and, therefore, the issues contained therein were not "fairly presented."  Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies.  28 U.S.C. § 2254(b), (c).  A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012)

---

[3] In Ground One, Petitioner contends that her Fourth Amendment rights were violated when the trial court admitted patient information obtained from Dr. Saith.  In Ground Three, Petitioner contends the trial court committed fundamental error by improperly instructing the jurors that Petitioner's possession of a controlled substance gave rise to the presumption that she knew it was illegal.  In Ground Four, Petitioner contends that that the trial court committed fundamental error in failing to instruct the jurors that possession of a valid prescription precludes a finding of guilt.

(internal quotation marks and brackets omitted). For an issue to be "fairly presented," a petitioner must have "presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and quotations omitted).

A petitioner seeking federal habeas corpus relief who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

As stated above, Biggs filed a supplemental initial brief in her direct appeal to the First DCA, in which she sought to raise the issues contained in Grounds One, Three and Four, on September 8, 2011, *after* the briefing schedule had expired and *after* the court had already issued its decision. ECF Doc. 23-5 at 4. It is undisputed that Biggs did not seek permission from the state appellate court prior to filing the supplemental brief.

The Florida procedural rules, however, do not allow for the submission of a supplemental brief without prior approval from the court. Florida Rule of Appellate Procedure 9.210(a) provides that, "the only briefs permitted to be filed by the parties in any one proceeding are the initial brief, the answer brief, a reply brief, and a cross-reply brief." *See id.*; 5 Am. Jur. 2d *Appellate Review* § 519 (2013) ("[g]enerally supplemental briefs may be filed pursuant to the provisions of the relevant appellate rules or by the consent of the court, subject to the restriction that an issue or claim may not be asserted for the first time in a supplemental brief"). Rule 9.210(f) sets out the times for service of those briefs, which had expired (with extensions) prior to the time Biggs filed the supplemental brief.

Moreover, even though the rules allow a party to "file notices of supplemental authority," such notices are only permissible "before a decision has been rendered" and "shall not contain argument." Fla. R. App. P. 9.225; *see Fla. Dept. of Health and Rehab. Svcs. v. Martin*, 563 So. 2d 1124, 1125 (Fla. 1st DCA 199) (striking portions of notice of supplemental authority that contained argument).[4] Thus, Petitioner's supplemental brief was not permissible under the rules of appellate procedure. *See Moradi v. State,* 280 So. 3d 546, 548–49 (Fla. Dist. Ct. App. 2019) (finding that failure of appellate counsel to request *permission* to file supplemental

---

[4] The Eleventh Circuit has a similar strict standard regarding supplemental briefs and, while allowed, with permission, "parties cannot properly raise new issues at supplemental briefing." *See United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000).

briefs, while appeal was pending, in order to make an argument may constitute ineffective assistance of counsel) (emphasis added).

Indeed, also as stated above, the State moved to strike Biggs's supplemental brief as untimely, and the First DCA, while noting the motion to strike, issued its mandate despite the filing of the supplemental brief. Because Biggs's supplemental brief was an impermissible filing, was untimely, and the First DCA issued its mandate without considering the additional claims raised by Biggs, the undersigned finds that Grounds One, Three and Four were not "fairly presented." *See Coleman v. Thompson,* 501 U.S. 722, (1991) (claim dismissed by state appellate court for untimely filing of notice of appeal cannot be brought in federal habeas absent showing of cause).

To save a claim that has been procedurally defaulted, petitioner must establish cause for or actual prejudice from the default or show the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent." *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), *see also, Murray v. Carrier*, 477 U.S. 478, 496 (1986). Biggs, however, fails to make either showing. She does not argue that she is actually

innocent and because these grounds for relief are also without merit, she has suffered

no cause for or actual prejudice from the default.[5]

## IV.    BIGGS'S REMAINING CLAIMS FAIL ON THE MERITS[6]

### A.    Ground Two: Trial Court Error For Allowing Admission Of Evidence Obtained From Warrantless Seizure of Pharmacy Records

Biggs argues her Fourth Amendment rights were violated when the trial court

admitted evidence derived from her prescription records, which were seized by law

enforcement without a warrant.   She claims the records are private medical

information protected by Health Insurance Portability and Accountability Act

("HIPAA").   She raised this claim in her initial brief on direct appeal.

Biggs's Fourth Amendment claim is not subject to review by this Court

because she had a full and fair opportunity to litigate the issue in state court.   *See*

*Stone v. Powell*, 428 U.S. 465 (1976).   When "the State has provided an opportunity

for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

granted federal habeas corpus relief on the ground that evidence obtained in an

---

[5] Ground One is without merit for the same reasons discussed in Grounds Two and Eight, below; Ground Three is without merit for the same reasons discussed in Ground Ten; and Ground Four is without merit for the same reasons discussed in Ground Eleven.

[6] In Ground Five, Biggs argues that counsel should have requested a lesser included instruction of mere possession, rather than trafficking, and that if one had been requested Biggs would have received a lesser sentence.   ECF Doc. 1 at 13.   In Biggs's reply, she concedes this claim is unexhausted and, thus, abandons this ground for relief.   ECF Doc. 28 at 12.

unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnotes omitted).

Biggs raised this claim in a pretrial motion to suppress and argued to the state court that law enforcement's receipt of her prescription records from Adams Pharmacy violated her Fourth Amendment rights against an illegal search and seizure. The state court held an evidentiary hearing on the issue and Biggs's counsel argued "there's no basis to show that [Biggs's] Fourth Amendment Rights against search and seizure were not violated." ECF Doc. 23-1 at 217. The state court allowed Biggs to file a supplemental brief, and her counsel did, in which he argued that Biggs's "rights against an illegal search and seizure and her Privacy Rights guaranteed by the constitution of the United States," were violated.

Additionally, Biggs raised this claim as the sole ground for relief in her initial brief on direct appeal. There, Biggs's counsel argued that in determining the motion to suppress, the trial court should have "turn[ed] to the Fourth Amendment law to determine whether the police acted reasonably." ECF Doc. 23-4 at 23. Counsel also argued that a patient's pharmacy records are protected by the Fourth Amendment. *Id.* Thus, Biggs was afforded a full and fair opportunity to litigate her Fourth Amendment claim in state court, precluding her from litigating this issue to this Court.

Biggs argues that the state's reliance on *Stone v. Powell* to "brush aside" a violation of her Constitutional rights was "misplaced and erroneous."  ECF Doc. 28 at 9.  Her argument, however, ignores the underlying premise of the holding in *Stone*, which is that "state courts are as competent as the federal courts in insuring that federal constitutional rights are protected."  *See Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) (citation omitted).  Thus, *Stone* would apply regardless of whether the state court may have been wrong in its determination (which it was not here).

### B.    Ground Six: IATC For Failure To Request Jury Instruction On Biggs's Affirmative Defense That She Had A Written Prescription

Biggs argues she offered evidence of only one defense at trial: that she believed the drugs she possessed were obtained pursuant to valid prescriptions from Dr. Saith, and her psychologist, Dr. Jiminez.  Therefore, she argues her counsel was ineffective for failing to request a jury instruction on this defense.  ECF Doc. 1 at 14.  Biggs exhausted this claim by raising it in her second amended 3.850 motion (as ground four), ECF Doc. 23-10 at 19, and in the appeal of the denial of that motion, ECF Doc 23-11 at 128.

Having reviewed the state court's order denying 3.850 relief, the undersigned finds that the state court's denial of relief on this ground was not contrary to clearly established federal law, did not involve an unreasonable application of clearly

established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In the state court's order denying 3.850 relief, the court relied upon *Day v. State*, 119 So. 3d 485 (Fla. 1st DCA 2013), a case in which the First DCA rejected a similar argument of trial court error because "the evidence of a valid prescription" was "weak at best." ECF Doc. 23-10 at 31. As the state court in Biggs's case correctly reasoned, if failure of a trial court to issue such a jury instruction "does not present a compelling demand for applying the fundamental error doctrine," then it can also not be the basis of an IATC claim. *See Day*, 119 So.3d at 490; *Chandler v. State*, 848 So. 2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the *Strickland* test"); ECF Doc. 23-10 at 32-33.

The state court also correctly noted that because the jury found Biggs guilty on three counts of obtaining drugs by fraud or forging a prescription, giving the jury the requested defense would have made no difference. ECF Doc. 23-10 at 32. Moreover, as the State points out, Biggs argued in her state habeas petition that her appellate counsel was ineffective for failing to raise this issue on direct appeal. The First DCA, however, denied the petition on the merits. Thus, if her appellate counsel

was not ineffective for failing to request this jury instruction, then her trial counsel cannot be either.

### C.    Ground Seven: IATC For Failure To Subpoena Lead Investigator Tara Milstead As A Witness At The Motion To Suppress Hearing

Biggs argues trial counsel was ineffective for failing to subpoena Detective Tara Milstead to appear at the suppression hearing.  According to Biggs because Detective Milstead interviewed Dr. Saith, "[i]t was Detective Milstead who violated the Petitioner's Fourth Amendment rights."  ECF Doc. 28 at 15.  Thus, Detective Milstead's testimony "was critical" and her "absence at the hearing on the motion to suppress voided counsel's claim entirely."  *Id.*; ECF Doc. 1 at 16.

The state court denied relief on this ground (asserted as ground six in the second amended 3.850 motion) for three reasons.  First, the court found that "[t]here was no testimony that Dr. Saith made any disclosures of information from the patient files."  ECF Doc. 23-10 at 29.  Instead, "Dr. Saith simply told law enforcement that as to certain controlled substances it [was] her practice not to prescribe them."  *Id.* Second, defense counsel was allowed to file a supplemental motion to suppress and make additional arguments based on it.  Therefore, the state court held "the issue of whether any of the evidence should be suppressed was fully litigated in 2008 and decided adversely to the Defendant due to the Court's conclusions of law and fact, not due to any purported defect on the part of counsel."  *Id.* at 30.  Third, the state court determined that under Florida law, Biggs did not have a reasonable expectation

of privacy in prescriptions which were fraudulent. *See Hendley v. State*, 58 So. 3d 296 (Fla. Dist. Ct. App. 2011) ("society would not recognize as reasonable any asserted expectation of privacy in a fraudulent prescription"). *Id.* at 299–300.

Since Biggs could not have had a reasonable expectation of privacy as to fraudulent prescriptions, "defense counsel cannot logically be 'ineffective' for failing to have evidence of fraudulent prescriptions suppressed based on a purported Fourth Amendment violation." *Id.* at 30. Likewise, defense counsel could not have been ineffective for failing to call Detective Milstead as a witness because her testimony would have made no difference given those issues. Indeed, although not discussed by the state court, the lack of Detective Milstead's presence at the suppression hearing was discussed with the trial court. Biggs's counsel argued at the hearing and also in a supplemental motion to suppress that the State could not meet its burden of showing law enforcement did not receive patient information or that they acted in good faith without Milstead's testimony, since she was the lead investigator. The fact that Milstead did not testify, however, was of no consequence to the trial court. The undersigned finds that the state court's denial of relief on this ground was neither contrary to law nor a misapplication of the facts.

**D.   Ground Eight: IATC For Failure To Expressly Rely On Florida Statute § 456.057(7)(a) During Suppression Hearing**

Biggs argues counsel was ineffective during the suppression hearing for relying upon Florida Statute § 465.017, which applies to pharmacy records, and

Florida Statute 395.3025, which applies to patient medical records owned by a hospital or other licensed facility. Biggs contends that counsel should, instead, have relied upon Florida Statute § 456.057(7)(a), which applies to patient medical records owned by health care professionals.

According to Biggs, "had counsel presented the correct Fl. Statute § 456, a clear violation would have been established by the court and the illegal information obtained during a warrant-less search and seizure would have been suppressed." ECF Doc. 1 at 18. The State argues that defense counsel thoroughly argued application of § 465.017 and § 395.3025, and correctly noted that § 456.057(7)(a) was identical to § 395.3025. Therefore, the State concludes "any more specific argument from [defense counsel] with respect to the applicability of § 456.057(7)(a) would not have carried the day. No deficient performance or prejudice has been demonstrated." ECF Doc. 22 at 71.

The state court addressed this claim as ground two of the 3.850 motion and addressed it along with ground six (IATC for not calling Det. Milstead). ECF Doc. 23-10 at 29. As stated above, the court found that a motion to suppress was filed; that the pharmacy records were properly inspected and copied pursuant to Fla. Stat. § 893.07(4)[7]; that law enforcement did not receive any "patient information" from

---

[7] At the time of the search of the records, September of 2008, Fla. Stat. § 893.07(4) provided: "records shall be kept and made available for a period of at least 2 years for inspection and copying

Dr. Saith; and that Biggs had no legitimate expectation of privacy in fraudulent prescription records.

The undersigned finds that the state court's denial of relief on this ground was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Based on the reasons identified by the state court as to why the trial court correctly denied the suppression motion, any argument by counsel more explicitly discussing § 456.057 would not have mattered. Additionally, as the Respondent points out, counsel specifically cited Chapter 456 along with Chapter 395 in the motion to suppress and admitted that "[a]lthough these are separate statutes, their test is identical in substance." ECF Doc. 23-1 at 41. Thus, the

---

by law enforcement officers whose duty it is to enforce the laws of this state relating to controlled substances." Fla. Stat. Ann. § 893.07(4) (effective 1997 to 2011). The 3.850 court noted that, in *State v. Carter*, 23 So.3d 798 (Fla. 1st DCA 2009), the First DCA determined that the then-effective § 893.07(4) did not require law enforcement officers to procure a search warrant or subpoena prior to obtaining controlled substance records from pharmacies. ECF Doc. 23-10 at 20 n.1. *See also*, *State v. Tamulonis*, 39 So. 3d 524, 525–26 (Fla. Dist. Ct. App. 2010). Section 893.07(4) was amended in 2011 to incorporate these holdings, and the following language was added: "Law enforcement officers are not required to obtain a subpoena, court order, or search warrant in order to obtain access to or copies of such records."

provisions of Fla. Stat. § 456.057 were placed before the state trial court in the suppression motion.

In her reply, Biggs argues that it does not matter if the prescriptions were false, all that matters is that the information regarding the prescriptions was obtained from her physician, Dr. Saith. Biggs relies upon *State v. Sun*, 82 So. 3d 866, 868–69 (Fla. 2nd DCA 2011) but *Sun* is inapposite.

In *Sun*, the defendant was suspected of receiving multiple prescriptions through doctor-shopping. The detective asked each doctor "if they had a patient in their care with Sun's name and birth date, and each said yes. When asked, each doctor denied knowing Sun had been seeing other doctors who had been giving him the same or similar prescriptions. They provided written statements to that effect." *Sun*, 82 So. 3d at 868–69. The court held that the replies by the doctor revealed statements made by the patient "in the course of the care and treatment," and are thus protected by the statute. *Id.* at 872.

Thus, in *Sun*, law enforcement needed to prove what was said between a doctor and a patient to prove its case. The State had to prove that Sun lied about whether he got prescriptions from other doctors. In the instant case, however, the prescriptions were never written by Dr. Saith for Biggs but were falsified by Biggs.

Thus, as the state court correctly determined in denying relief on this ground, no patient information was obtained from Dr. Saith.

### E.    Ground Nine: IATC For Failure To Convey Favorable Plea Offer To Biggs

Biggs claims the State made a favorable plea offer for 36 months' imprisonment followed by 36 months' probation, which her counsel, Ted Stokes, failed to convey to her because he did not want the case to be resolved until he was paid in full.  ECF Doc. 1 at 19.  Specifically, she alleges counsel did not meet with her on August 20, 2008, as he testified he did.  She further alleges the plea agreement was withdrawn by December 5, 2008, and an amended information was filed to include trafficking charges that had been withdrawn.  Thus, she faced a mandatory minimum of 25 years' imprisonment.  *Id.* at 20.

The *Strickland* standard applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse.  *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014).  "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution."  *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991).  This obligation includes informing a client about formal plea offers presented by the government, and the failure to advise a client about such an offer is ineffective

assistance of counsel. *See Missouri v. Frye*, 566 U.S. 134, 144-45 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012).

In the context of a rejected or uncommunicated plea offer, the prejudice prong requires the movant to show "a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley*, 751 F.3d at 1222 (quoting *Lafler*, 566 U.S. at 164). However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.

Petitioner raised this as ground one of her second amended 3.850 motion, and this is the only ground on which the state court conducted an evidentiary hearing. In denying relief on this ground, the state court found that this claim was belied by the record, that Biggs's testimony at the evidentiary hearing was not credible, and that she also failed to show that she would have accepted the offer. The undersigned finds that the state court's denial was not contrary to law or a misapplication of the facts. Moreover, as set forth below, on review this Court should defer to the

credibility determinations made by the state court absent clear and convincing evidence to the contrary.

The state court first noted that defense counsel mentioned plea offers to the court at two separate pretrial hearings in Biggs's presence. ECF Doc. 23-10 at 22-23. On March 25, 2008, Stokes told the court, "I understand some things have been going on, as far as offers." ECF Doc. 23-10 at 22. On August 15, 2008, Stokes told the court "we are negotiating on this, and I think that we have received a final offer." *Id.* at 23.

Also, as the state court explained, emails between the prosecutor and defense counsel on August 20, 2008, were introduced, showing that the prosecutor herself had "offered [Biggs] something sweet for a while now and she won't take it." *Id.* at 23. The return email indicated that defense counsel responded, "How sweet is it? She is coming in this afternoon, so give me your best deal and I will see if she will take it." *Id.* The prosecutor wrote back with the details, specifically that she would avoid the mandatory-minimum sentence. *Id.* The court explained that counsel testified it was his standard practice to present such offers to his client "every time we met" and that his records indicated he met with Biggs at 6 p.m. on August 20, 2008, the same day as the emails. The record also showed that Stokes printed the email out at 5:09, which would have been "consistent with Mr. Stokes preparing for

a 6:00 pm meeting with the Defendant," despite the fact that Stokes could not testify for sure that he met with Biggs at that time. ECF Doc. 23-10 at 24.

Biggs testified that "Mr. Stokes never even told me he would be working on trying to get a plea offer, but he never presented any formal plea offers to me, no sir." She claimed that when she appeared at counsel's office on August 20, 2008, counsel was not present, and no meeting took place. She testified, therefore, that she never knew about the plea offer and would have taken it if she had known about it.

The state court, however, found Biggs's testimony not credible. First, the court noted Biggs was obviously not a disinterested witness and her testimony that she never knew about the plea offer was self-serving. Second, her testimony is not consistent with the references to plea offers that were made in open court in Biggs's presence. Third, the circumstances of the printing of the emails and their content made clear that negotiations had been ongoing – with Biggs's involvement -- throughout 2008, culminating in a final plea offer on August 20, 2008.

As for Biggs's claim that counsel never showed up for the August 20, 2008 meeting, the state found "it much more likely that Stokes was appropriately preparing for his meeting with the Defendant, met with the Defendant that day and discussed this plea offer with the Defendant, particularly in light of [the prosecutor's] stated intent to re-institute the trafficking charges." ECF Doc. 23-10

at 26-27.  The state court also found Biggs's testimony that she would have accepted this plea not credible and found "Stokes' testimony that the Biggs were 'sticking together' and refused to plead guilty or nolo contendere unless the others did to be believable."  ECF Doc. 23-10 at 27.

A question of the credibility and demeanor of a witness is a question of fact. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Freund v. Butterworth*, 165 F.3d .939, 862 (11th Cir. 1999) (*en banc*)).  Under Section 2254(e)(1), "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence."  *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*); *see also Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995).

"Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'"  *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d

1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the applicant's testimony]."), *cert. denied*, 526 U.S. 1047 (1999).

Biggs has not provided clear and convincing evidence, indeed no evidence, that the state court erred in finding the testimony of former defense counsel more credible than that of Biggs. Instead, Biggs merely restates her position that she was not advised of the plea offer. ECF Doc. 28 at 21. She does not address the references to offers made at the pretrial hearings. The undersigned finds that Biggs is not entitled to habeas relief on this Ground.

**F.     Ground Ten: Ineffective Assistance Of Appellate Counsel ("IAAC") For Failing To Argue Trial Court Error In Not Instructing The Jury That The State Had To Prove Biggs Actually Knew Prescriptions Were Fraudulent.**

Biggs argues appellate counsel was ineffective for failing to raise trial court error regarding the lack of a jury instruction shifting the burden to the State to show that Biggs did not know the prescriptions were invalid. Specifically, she argues that once she testified she thought the prescriptions placed at Adams Pharmacy were valid, the burden shifted to the state to prove she did know of the illegal nature of the drugs, and thus, the court should have so instructed the jury.

Biggs raised this argument in her state court habeas petition, which was denied without a written opinion. Applying the *Richter* standard, the undersigned finds that a reasonable basis exists for the First DCA's denial of relief on this ground because

the jury instructions followed the applicable Florida Statute and Biggs's argument

that she believed she had a valid prescription was essentially rejected by the jury's

finding on counts one through three.

With regard to the instructions themselves, the burden shifting Biggs refers to

is from Fla. Stat. § 893.101[8] which provides the following:

> (2) The Legislature finds that knowledge of the illicit nature of a
> controlled substance is not an element of any offense under this chapter.
> Lack of knowledge of the illicit nature of a controlled substance is an
> affirmative defense to the offenses of this chapter.
>
> (3) In those instances in which a defendant asserts the affirmative
> defense described in this section, the possession of a controlled
> substance, whether actual or constructive, shall give rise to a permissive
> presumption that the possessor knew of the illicit nature of the
> substance. It is the intent of the Legislature that, in those cases where
> such an affirmative defense is raised, the jury shall be instructed on the
> permissive presumption provided in this subsection.

Fla. Stat. Ann. § 893.101 (West).  The jury instructions given in the instant case for

the obtaining drugs by fraud counts (One through Three) were as follows:

> Knowledge of the illicit nature of the controlled substance is not an
> element of the offense of OBTAINING DRUGS BY FRAUD OR
> FORGING A PRESCRIPTION.  Lack of knowledge of the illicit nature
> of a controlled substance is an affirmative defense.  CYNTHIA BIGGS
> has raised this affirmative defense.  However, yon are permitted to
> presume that CYNTHIA BIGGS was aware of the illicit nature of the
> controlled substance if you find that CYNTHIA BIGGS was in actual
> or constructive possession of the controlled substance.
>
> If from the evidence you are convinced that CYNTHIA BIGGS knew
> of the illicit nature of the controlled substance, and all of the elements

---

[8] Fla. Stat. § 893.101 was enacted in 2002 and has not been amended or repealed.

of the charge have been proved, you should find CYNTHIA BIGGS guilty.

If you have a reasonable doubt on the question of whether CYNTHIA BIGGS knew of the illicit nature of the controlled substance, you should find CYNTHIA BIGGS not guilty.

ECF Doc. 23-1 at 85. The instructions on "knowledge" for each of counts Four through Ten were identical to the above instruction except "TRAFFICKING" replaced "OBTAINING DRUGS BY FRAUD OR FORGING A PRESCRIPTION." *See, e.g.,* ECF Doc. 23-1 at 87.

Thus, the instructions perfectly tracked the language of the statute. Also, in *State v. Adkins*, the Florida Supreme Court upheld the statute and instruction, stating: "the Legislature's decision to make the absence of knowledge of the illicit nature of the controlled substance an affirmative defense is constitutional. Under section 893.13, as modified by section 893.101, the State is not required to prove that the defendant had knowledge of the illicit nature of the controlled substance in order to convict the defendant of one of the defined offenses." *State v. Adkins*, 96 So. 3d 412, 423 (Fla. 2012).

Finally, Biggs's argument that she did not know of the illegal nature of the drugs is dependent on the jury believing that Biggs truly thought she had valid prescriptions for the drugs. However, the jury was instructed that a conviction on counts one through three required a finding that she obtained the drugs by "misrepresentation, fraud, forgery, deception or subterfuge." ECF Doc. 23-1 at 84.

Thus, when the jury found her guilty of those counts, the jury necessarily found that she did not have valid prescriptions for the drugs. This finding shows that the jury would have rejected any argument that she did not know of the illegal nature of the drugs.

Notably, an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted). Therefore, appellate counsel was not ineffective for failing to raise an argument based on the knowledge element in § 893.101, and Biggs is not entitled to habeas relief on this claim.

### G. Ground Eleven: IAAC For Failing To Argue The Trial Court Erred In Failing To Instruct The Jury On The Affirmative Prescription Defense For Charges Involving Clonazepam And Hydrocodone

Biggs argues that appellate counsel should have argued that the trial judge failed to properly instruct the jury regarding the affirmative defense of a valid prescription. Biggs raised this issue in her state habeas petition, which, as stated above, the First DCA denied without written opinion, ECF Doc. 23-8 at 18. Because there is no written opinion setting out the state court's reason for denying this ground of relief, the undersigned applies the reasonable basis standard set forth in *Richter*, and finds that a reasonable basis exists in this case for the reasons set out extensively regarding Ground Six, *supra*.

Trial court error through an improper jury instruction cannot be the basis for federal habeas corpus relief unless the instruction or evidence rendered the whole trial so fundamentally unfair as to amount to a denial of due process. *Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1995) ("Because a federal habeas corpus case is not a vehicle to correct evidentiary rulings, we inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial." (quotation marks omitted)); *Jones v. Dugger*, 888 F.2d 1340, 1343 (11th Cir. 1989) ("[I]mproper jury instructions can never be the basis for federal habeas corpus relief unless the instruction rendered the whole trial so unfair as to amount to a denial of due process.").

As noted in the discussion of Ground Six, the jury found Biggs guilty of three counts of obtaining controlled substances by "misrepresentation, fraud, forgery, deception or subterfuge."  ECF Doc. 23-1 at 69-70, 84.  Therefore, contrary to Biggs's argument, predicting whether the jury would have found differently if given a valid prescription affirmative defense is not mere "speculation and assumption." *See* Biggs's Reply, ECF Doc. 28 at 27.  To the contrary, it is clear that it would have made no difference.

In other words, because the jury specifically found Biggs obtained the controlled substances through fraud, there is not a reasonable probability that the jury would have found otherwise even if given the valid prescription affirmative

defense.  Similarly, even if there had been error in the instruction, such error was not "of such magnitude as to deny fundamental fairness to the criminal trial." *Baxter*, 45 F.3d at 1509.  An appellate attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted).  Therefore, Biggs is not entitled to habeas relief on this claim.

## V.    CONCLUSION

For the reasons stated above, Biggs is not entitled to habeas relief on any of her Grounds.

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted.  In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Additionally, this Court must consider the deferential standards prescribed by § 2254, particularly where the state court's factual and credibility determinations are made after an evidentiary hearing.  *See id.*

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.    Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to

reflect Mark S. Inch as the Respondent.

Additionally, it is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Biggs* 2006-CF-1726, in the First Judicial Circuit, in and for Santa Rosa County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 3rd day of April, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.